UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CONROY CONDECORE,

          Petitioner,

     v.

Case No. 2:26-cv-509-KCD-DNF

PAMELA JO BONDI, KELEI B.
WALKER, SECRETARY KRISTI
NOEM, TODD LYONS, KEVIN
GUTHRIE,

          Respondents,

_____/

## **ORDER**

Petitioner Conroy Condecore is a Jamaican citizen who lawfully entered the United States but overstayed his visa. (*See* Doc. 20-1 at 16.)[1] He was then convicted of child abuse and removal proceedings began. (*Id.* at 18.) An immigration judge denied asylum, granted withholding to Jamaica, and ordered Condecore removed. (*Id.* at 1-2). Condecore did not appeal, so that order became final. After a brief period of detention, ICE released him on an order of supervision. (*Id.* at 3-5.)

For several years, Condecore lived in the community and apparently complied with his conditions of release. But then, on November 20, 2025, ICE revoked his supervision and detained him. (Doc. 2 at 3.) ICE cited changed

---

[1] For ease of reference, the Court cites to the page numbers generated by its electronic filing system for all exhibits.

circumstances and a significant likelihood of removal in the foreseeable future, pointing specifically to a new plan to remove him to South Sudan. (*See* Doc. 20-1 at 6-8.) Condecore was provided an informal interview on the day of his arrest. (*Id.* at 32.) This petition for a writ of habeas corpus followed, alleging violations of the Fifth Amendment, the Immigration and Nationality Act ("INA"), the Administrative Procedure Act, and the *Accardi* doctrine. (*See* Doc. 2.)

The Government meets the petition with two arguments. First, it asserts that the INA strips this Court of subject-matter jurisdiction. (Doc. 20 at 3.) Second, on the merits, the Government contends the detention is legally sound because Condecore is well within the presumptively reasonable period of detention and ICE complied with its regulatory obligations. (*Id.* at 3-21.)

The Court is satisfied it has jurisdiction. But on the merits, the Government is right. The habeas petition is therefore **DENIED WITHOUT PREJUDICE**.

## I. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its

2

protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).[2]

## II. Discussion

The Government first claims that two provisions of the INA—8 U.S.C. § 1252(g) and § 1252(b)(9)—preclude federal jurisdiction. This Court has already addressed these precise arguments and rejected them for the same reasons they fail today. *See Obando-Vargas v. Assistant Dir.*, No. 2:26-CV-265-KCD-NPM, 2026 WL 796804, at *1-2 (M.D. Fla. Mar. 23, 2026). Section 1252(g) forecloses judicial review of just three discrete actions by the Attorney General, and challenging the procedural mechanics of a detention is not one of them. Likewise, the zipper clause in § 1252(b)(9) only bars review of claims involving a direct challenge to an order of removal; it does not block a collateral challenge to the legality of physical custody. With the jurisdictional underbrush cleared away, the Court can turn to the merits. Condecore's claims are addressed in turn.

---

[2] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

### A. Substantive Due Process (Counts One and Four)

A noncitizen subject to a final order of removal, like Condecore, has no inherent right to walk free while awaiting deportation. *See* 8 U.S.C. § 1231. "Detention during deportation proceedings" is simply "a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). But there is a catch. Holding a removable alien indefinitely is also a constitutional non-starter since "the Due Process Clause applies to all persons within the United States." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

To reconcile these points, the Supreme Court in *Zadvydas* capped "an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689. And to give lower courts a workable yardstick, the Court drew a line at six months: any post-removal detention lasting six months or less is "presumptively reasonable." *Id.* To have a substantive due process claim in this context, then, "the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

Apply that framework here, and Condecore's due process claim immediately runs into a math problem: he has not been detained long

enough. ICE grabbed him on November 20, 2025. Because his confinement remains short of the six-month mark, he sits within the presumptively reasonable window. *See Guerra-Castro v. Parra*, No. 1:25-CV- 22487, 2025 WL 1984300, at \*4 (S.D. Fla. July 17, 2025) (finding habeas petition "premature" because "Petitioner has not been detained for more than six months"); *see also Jiang v. Mukasey*, No. 208-CV-773-FTM-29DNF, 2009 WL 260378, at \*2 (M.D. Fla. Feb. 3, 2009); *Noel v. Glades Cnty. Sheriff*, No. 2:11-CV-698-FTM-29, 2011 WL 6412425, at \*2 (M.D. Fla. Dec. 21, 2011).

Condecore spends many pages explaining that his removal is not reasonably foreseeable. But this argument puts the cart before the horse. Until the six-month *Zadvydas* period concludes, detention is presumptively reasonable, and any substantive due process claim is not ripe. *See, e.g., Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 1895479, at \*8 (S.D. Fla. July 8, 2025); *Lopez v. Dir. of Enf't & Removal Operations*, No. 3:25-CV-1313-JEP-SJH, 2026 WL 261938, at \*12 (M.D. Fla. Jan. 26, 2026).

Condecore also seems to claim that the Government's decision to revoke his supervision and return him to custody is a separate substantive due process violation. (Doc. 2 at 23-24.) But that argument rests on a faulty premise. There is no substantive right to remain free on an order of supervision. Release on an order of supervision is a matter of administrative grace born of logistical necessity, not a permanent constitutional entitlement.

5

Condecore assumes that as long as he complies with his conditions and stays out of trouble, the Government's hands are tied. (*Id.*) But as explained below, that is not correct. The core purpose of post-removal-order detention is to effectuate the removal order. When the Government determines that circumstances have changed—like charting a new path to removal—it has the statutory and regulatory authority to revoke a noncitizen's supervision and finish the job, regardless of his prior compliance. *See* 8 C.F.R. §§ 241.4(l), 241.13(i).

Because immigration detention is a civil tool rather than a criminal penalty, the constitutional line is generally drawn at punishment. *See Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th Cir. 1981). By contrast, the Government can lawfully hold a noncitizen to ensure they are present for removal or to keep the public safe. That is simply the machinery of the immigration system doing its job. A substantive due process violation happens only when that machinery breaks down—when the detention loses its reasonable connection to effectuating a removal order and morphs into a penalty. *Cf. Lee v. Stone*, No. 2:11-CV-00014-RWS, 2011 WL 4553147, at *7 (N.D. Ga. Aug. 25, 2011). So long as the custody serves a legitimate immigration purpose rather than acting as a punitive measure, it stays on the right side of the Constitution. *See, e.g., United States v. Salerno*, 481 U.S. 739, 747 (1987); *Rodriguez v. Perry*, 747 F. Supp. 3d 911, 917 (E.D. Va. 2024)

("[A]liens . . . have a substantive due process right to be free of arbitrary confinement pending deportation proceedings.").

Condecore cannot show that his current stint in custody is a punishment masquerading as immigration processing or is otherwise arbitrary. He is subject to a final removal order that stands uncontested. The INA explicitly authorizes a return to detention to effectuate such orders. Under the rules, ICE may revoke a noncitizen's release to effectuate removal. 8 C.F.R. § 241.13(i)(2). And the Government no doubt has a legitimate interest in doing exactly that—enforcing its laws, ensuring individuals do not flee, and protecting the public. *See Malam v. Adducci*, 469 F. Supp. 3d 767, 790 (E.D. Mich. 2020). Here, ICE revoked Condecore release specifically to enforce his outstanding removal order. (Doc. 20-1 at 6.) Returning him to custody thus serves a recognized, legitimate government objective.

## B. Procedural Due Process (Count Two)

Condecore turns next to the procedural mechanics of his re-detention. He complains that ICE locked him back up without providing adequate notice or a meaningful opportunity to be heard. (Doc. 2 at 24-27.)

The Constitution, of course, demands that before the government strips a person of a protected liberty interest, it must provide fair notice and a meaningful opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 332-33 (1976). But due process is flexible. It "calls for such procedural protections

as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

In the context of revoking a noncitizen's supervised release, ICE's regulations strike that constitutional balance by guaranteeing written notice and an informal interview that allows the individual to respond. *See* 8 C.F.R. § 241.13(i).[3] These guardrails are undoubtedly sufficient considering the interests at play. And Condecore offers no authority to the contrary. *See Valdes-Santovenia v. Ripa*, No. 2:25-CV-01063-JES-DNF, 2025 WL 3771264, at *3 (M.D. Fla. Dec. 31, 2025); *cf. Daniels v. Tampa Police Dep't*, No. 8:25-CV-01529-WFJ-AEP, 2025 WL 2959658, at *3 (M.D. Fla. Oct. 20, 2025) ("[P]rocedural due process guarantees fair procedure and requires notice and an opportunity to be heard before any governmental deprivation of a [constitutionally-protected] interest.").

Take notice first. According to the record filed, ICE provided Condecore with written notice of the revocation on November 20, 2025—the very day he was detained. (*See* Doc. 20-1 at 6.) The paperwork identified the agency's decision and its underlying rationale: the new plan to effectuate his removal to South Sudan. (*Id.* at 6-8.)

---

[3] As best the Court can tell, the Government previously released Condecore after determining that there was no significant likelihood of his removal. So the regulation governing his return to custody here is 8 C.F.R. § 241.13(i). *See Choy v. Woosley*, No. 4:25-CV-197-DJH, 2026 WL 324601, at *3 (W.D. Ky. Feb. 6, 2026).  Condecore also cites § 241.13 as the applicable regulation. (Doc. 1 at 26.)

Then comes the opportunity to be heard. The Government claims that ICE sat Condecore down for an informal interview that same day to discuss his return to custody. (*Id.* at 32.) Condecore does not dispute this version of events despite the opportunity to do so. (*See* Doc. 22.) And so the Court treats the Government's unrebutted account as fact.

Condecore seemingly takes aim at the agency's underlying justification for the revocation, arguing ICE failed to establish the changed circumstances required to pull him off supervised release. He claims there is no hard evidence that his removal is any more likely today than it was years ago. But the regulations do not demand a full-blown evidentiary trial or a judicial-style opinion before ICE can yank an alien back from release. Section 241.13(i) leaves the determination of whether "circumstances have changed" squarely in the agency's hands. *Id.* To the extent this Court has any role in questioning that operational judgment, our posture must be highly deferential. As the Supreme Court has cautioned, we "must take appropriate account of the greater-expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive ... efforts to enforce this complex [area law of law], and the Nation's need to speak with one voice in immigration matters." *Zadvydas*, 533 U.S. at 700. So "the Court's review of the respondents' determination that there are changed

9

circumstances in this case is necessarily limited." *Nguyen v. Noem*, 797 F. Supp. 3d 651, 666 (N.D. Tex. 2025).

Condecore is essentially asking this Court to look over the agency's shoulder and second-guess its operational assessment of its own removal prospects. But the law affords the Government broad discretion to decide when to enforce a removal order, and ICE exercised that discretion here and documented its decision accordingly. *See Morales Sanchez v. Bondi*, No. 5:25–CV–02530–AB–DTB, 2025 WL 3190816, at *3 (C.D. Cal. Oct. 3, 2025). That kind of executive judgment comes with a presumption of regularity, and Condecore offers nothing more than his own skepticism to rebut it. Much more is required for this Court to step in and declare ICE's conduct unconstitutional. *See Lewis v. United States*, 279 U.S. 63, 73 (1929) ("It is the settled general rule that all necessary prerequisites to the validity of official action are presumed to have been complied with, and that where the contrary is asserted it must be affirmatively shown.").

In the end, Condecore has failed to show a procedural due process violation tied to the revocation of his release. The Government gave him the why and the when, which is all the regulations require. But even if we were to spot him a procedural foul—a misplaced signature, a sloppy citation, or a truncated explanation—that still would not unlock his cell door. The writ of habeas corpus is a profound remedy, not a penalty for bureaucratic typos.

10

*Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("The habeas statute provides only that a writ of habeas corpus 'may be granted,' and directs federal courts to 'dispose of [habeas petitions] as law and justice require.'"). Even if the agency's initial administrative process was somehow lacking, Condecore can hardly complain that he is being denied a meaningful opportunity to be heard *now*. Through this very habeas proceeding, he has had a full chance to review the Government's evidence, file his briefs, and press his legal arguments before an Article III court. He has had his say. Because this litigation itself has provided him with the exact procedural safeguards he claims to have missed, the Court declines to use the extraordinary tool of habeas relief to simply wipe the slate clean. "Because habeas is not backward-looking, the process provided now renders forward-looking relief separately inappropriate." *Ladak v. Noem*, No. 1:25-CV-194-H, 2025 WL 3764016, at \*5 (N.D. Tex. Dec. 30, 2025).

### C. Administrative Procedure Act (Counts Three and Five)

Condecore brings several claims under the APA. The difficulty here is twofold. First, he has alleged these claims in a habeas petition, which is the wrong vehicle for the job. The writ of habeas corpus exists to challenge the fact or duration of physical confinement. It is not a catch-all funnel for standard administrative grievances. Trying to shoehorn a freestanding APA challenge into a habeas petition simply does not work. *See Fleurimond v.*

11

*Noem*, No. CV-26-00037-PHX-MTL (CDB), 2026 WL 507542, at *3 (D. Ariz. Feb. 24, 2026). A habeas petition comes with a streamlined procedure, fast-tracked rules, and a nominal filing fee. An APA challenge, by contrast, is a standard civil action with a heftier filing fee and following the ordinary, more deliberate pace of the Federal Rules of Civil Procedure. Litigants cannot sidestep those standard requirements by simply slapping a habeas label on an administrative complaint. *See Alvarez v. Noem*, No. 5:26-CV-0013-JKP, 2026 WL 93972, at *7 (W.D. Tex. Jan. 9, 2026); *Richmond v. Scibana*, 387 F.3d 602, 606 (7th Cir. 2004) (recognizing legal distinction between habeas cases and civil actions brought under APA, which have different filing fees and exhaustion provisions).

Second, the APA itself leaves no room for such claims. The APA operates as a fallback option, providing a right of judicial review only when "there is no other adequate remedy in a court." 5 U.S.C. § 704. But Condecore has an adequate remedy—the very habeas petition he filed to get through the courthouse doors. *See Trump v. J.G.G.*, 604 U.S. 670, 674 (2025) (Kavanaugh, J., concurring). Because the writ of habeas corpus provides a fully adequate avenue to test the legality of his custody—which is the only thing Condecore is challenging here—the APA simply leaves no room for these redundant claims. *See Fleurimond*, 2026 WL 507542, at *3, *Rivera v. Noem*, No. 1:25-CV-01289 KWR-KBM, 2026 WL 381309, at *7 (D.N.M. Feb. 11, 2026).

12

### III. Conclusion

Condecore has not been detained long enough to transform his authorized custody into a due process violation under *Zadvydas*. And his remaining arguments—whether grounded in administrative technicalities or the like—do not warrant habeas relief. The Government is actively working to execute his removal, and it has cleared the necessary regulatory hurdles to keep him in custody while it does so. Because Condecore's current detention remains lawful, his petition (Doc. 2) must be **DENIED WITHOUT PREJUDICE**. The Clerk is **DIRECTED** to enter judgment accordingly, terminate any pending motions, and close the case.

**ORDERED** in Fort Myers, Florida on April 22, 2026.

Kyle C. Dudek
United States District Judge